IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.D., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 17-2691 |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                      February 9, 2018

The defendant, through the Immigration and Customs Enforcement agency, has a contract with a county immigration family center for the center to act as a detention facility and house immigration detainees and their children. The plaintiff was a detainee at the center when she became a victim of institutional sexual assault by a center staff member. The plaintiff has sued the United States under the Federal Tort Claims Act for the purported negligence of federal employees in (1) failing to protect her from the institutional sexual assault, and (2) preventing her from further harm after she reported the unlawful conduct.

The Federal Tort Claims Act provides that district courts have exclusive jurisdiction against claims for monetary relief against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The Government moves to have the court dismiss this case on the basis of an exception to this grant of jurisdiction, namely the Act's independent contractor exception. This exception generally provides that the Government is not responsible for the torts of independent contractors. As discussed further below, the court finds that the

county was an independent contractor with the United States and, therefore, this court lacks subject-matter jurisdiction over this lawsuit.

## I. PROCEDURAL HISTORY

On June 16, 2017, the plaintiff, E.D., filed a complaint alleging a single count of negligence under the Federal Tort Claims Act ("FTCA") against the United States of America.[1] *See* Compl. at 11, 12, Doc. No. 3. E.D. generally alleges that the Government owed her a duty of safekeeping, that the Government breached this duty, and that the Government should be monetarily liable for its negligence. *See id.* at 11-12.

The Government filed a motion to dismiss on August 31, 2017. Doc. No. 9. The Government asserted that four grounds supported dismissing the case: (1) the failure to exhaust administrative remedies; (2) the FTCA's independent contractor exception; (3) the FTCA's discretionary function exception; and (4) the failure to state a claim. *See* The United States' Mot. to Dismiss Pl.'s Compl. Pursuant to Rules 12(b)(1) and 12(b)(6) at 1, Doc. No. 9. E.D. filed a response to the motion on September 29, 2017. Doc. No. 11. The Government filed a reply to the response on October 11, 2017. Doc. No. 12. On October 17, 2017, the court held a telephone conference on the record to discuss the motion to dismiss. Doc. No. 15.

After the telephone conference, the court concluded "that the motion to dismiss, to the extent that the defendant argues that the independent contractor exception under the Federal Torts Claims Act bars the plaintiff's claims, raises a factual challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure." Oct. 25, 2017 Order at 1, Doc. No. 18. Accordingly, the court ordered the parties to engage in limited jurisdictional discovery on two issues: (1) "Did Berks County have day-to-day control of the

---

[1] E.D. filed a companion case with this court in 2016 asserting causes of action against various employees at BCRC-IFC, ICE, and various ICE officials. *See E.D. v. United States Immigration and Customs Enforcement, et al.*, No. 16-2750.

operations at Berks County Residential Center-Immigration Family Center ('BCRC-IFC')? (2) Did the United States Immigration and Customs Enforcement agency delegate its safekeeping duties of detainees at BCRC-IFC to Berks County?" *Id.*

The parties have concluded jurisdictional discovery. Both E.D. and the Government submitted supplemental briefs to the court on January 12, 2018. Doc. Nos. 25, 26. The motion to dismiss is now ripe for adjudication.

## II. FACTUAL BACKGROUND

In 2014, Immigration and Customs Enforcement ("ICE") detained E.D. at the Berks County Residential Center-Immigration Family Center ("BCRC-IFC"). Compl. at 2. During the course of her detention at BCRC-IFC, Daniel Sharkey, a BCRC-IFC employee, engaged in unlawful sexual activity with E.D. Compl. at 2–9.

Berks County operated BCRC-IFC pursuant to a contract with ICE called the "Intragovernmental Service Agreement" ("IGSA"). *See* Supplemental Br. Addressing Jurisdictional Disc. in Further Supp. of the United States' Mot. to Dismiss Pl.'s Compl. ("Def.'s Suppl. Br.") at Ex. 2, Intragovernmental Service Agreement ("IGSA"), Doc. No. 25-3. ICE and Berks County entered into the IGSA on March 30, 2010. *See id.* at 1. The IGSA provided that "The Service Provider shall provide residents/detainees with safekeeping, housing, subsistence, medical services that are not provided for elsewhere and other services in accordance with this Agreement."[2] *Id.* at 3.

Although ICE retained legal custody over detainees at BCRC-IFC, Berks County maintained physical custody of detainees. *See* Def.'s Suppl. Br. at Ex. 3, Family Residential Facility, Statement of Work at 1 ("Statement of Work"), Doc. No. 25-4. The IGSA requires Berks County to "house residents/detainee[s] and perform related residential/detention services

---

[2] Berks County is noted as the "Service Provider" in the IGSA. *See* IGSA at 1.

in accordance with the most current edition of ICE/DRO residential standards." IGSA at 6 (alteration to original). Additionally, the IGSA provides that "ICE inspectors will conduct periodic inspections of the facility to assure compliance with the most current edition of the ICE/DRO Residential Standards." *Id.*; *see id.* at 7 ("The Government has the right to inspect and test all services called for by the Agreement, to the extent practicable at all times and places during the term of the Agreement.").

Pursuant to the IGSA's inspection provisions, the contracting officer's representative ("COR"), Patricia Reiser ("Reiser"), exercised compliance supervision over BCRC-IFC.[3] *See* Plaintiff's Suppl. Resp. to Def.'s Mot. to Dismiss ("Pl.'s Suppl. Resp.") at Ex. 8, Contracting Officer's Representative Appointment Letter, Doc. No. 27-5.[4] Reiser spent about fifty percent of her time in 2014 on site at BCRC-IFC. *See* Pl.'s Suppl. Resp. at Ex. 1, Tr. of Dep. of Patricia Reiser ("Reiser Dep. Tr.") at 12, Doc. No. 26-2.

In her role supervising compliance, Reiser would occasionally note a deficiency in Berks County's performance of its duties. *See id.* at 24, 25–28. On these occasions, Reiser would either bring up her observations with BCRC-IFC managers or inform the contracting officer. *See id.* Reiser's testimony reveals that her role was to ensure compliance and provide BCRC-IFC with suggestions on ways to ensure compliance; her role was not to control and/or supervise daily operations. *See, e.g.*, *id.* at 108 (discussing a checklist that she gave to BCRC-IFC managers and stating that her purpose in using checklist was to "give [BCRC-IFC managers] assistance in the steps to not forget . . ."); *id.* at 131 ("Q. Who controls the day-to-day operations at the Berks County facility? A. Ultimately the Berks County administrator. Excuse me, the

---

[3] Patricia Reiser is also occasionally referred to in the record as the "Contracting Officer Technical Representative" ("COTR"). *See, e.g.*, Def.'s Supp. Br. at Ex. 11, Tr. of Dep. of Diane Edwards ("Edwards Dep. Tr.") at 90–91, Doc. No. 25-12.

[4] This document was filed under seal and is not available on ECF.

Berks County director."). Additionally, the Nakamoto Group, Inc. ("Nakamoto") regularly performed compliance audits of BCRC-IFC on behalf of ICE. *See, e.g.*, Pl.'s Suppl. Resp. at Ex. 9, Compliance Review Summ. Report.[5]

However, while ICE put mechanisms in place to ensure compliance, ICE did not control or supervise day-to-day operations at BCRC-IFC. *See* Statement of Work at 1. Numerous BCRC-IFC employees testified ICE did not supervise or control their day-to-day responsibilities. *See, e.g.*, Def.'s Suppl. Br. at Ex. 4, Tr. of Dep. of Daniel Sharkey at 249–50, Doc. No. 25-5 ("Q. Is it also correct that ICE officials did not control or dictate what you did on a day-to-day basis? A. No, they didn't."); *id.* at 252 ("[I] barely even talked to immigration officials in that building ever."); Def.'s Suppl. Br. at Ex. 6, Tr. of Dep. of Brittany Rothermel at 174, Doc. No. 25-7 ("Q. [A]side from times when Mr. Petrey may have asked you to locate a resident for him, were there any other times when ICE officials directed you in how to go about doing your job? A. No."). Supervisors and managers at BCRC-IFC also testified that ICE did not supervise or control their day-to-day responsibilities. *See, e.g.*, Def.'s Suppl. Br. at Ex. 9, Tr. of Dep. of Brandon Michael Witmer at 129, Doc. No. 25-10 ("Q. [W]hen you [made duty post] assignments you were not taking any directions from any ICE employee, were you? A. No."); Def.'s Suppl. Br. at Ex. 10, Tr. of Dep. of David Smith at 252, Doc. No. 25-11 ("Q. You were not supervised by any ICE employees in your day-to-day responsibilities, were you? A. No."). Even Diane Edwards, executive director of BCRC-IFC, testified that ICE did not supervise or control her day-to-day responsibilities. *See* Edwards Dep. Tr. at 90–91, Doc. No. 25-12 ("Q. Does that technical representative [Patricia Reiser] direct you in the day-to-day management of the facility? A. No."). Edwards also testified that Patricia Reiser's primary function was to oversee Berks County's compliance with the IGSA. *See id.* at 91 ("Q. Is it fair to say that [the] Contracting

---

[5] This document was filed under seal and is not available on ECF.

Officer Technical Representative's role was primarily to facilitate Berks County's compliance with the IGSA? A. Yes.").

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Government asks the court to dismiss on the basis of the independent contractor exception. *See* The United States' Mot. to Dismiss Pl.'s Compl. Pursuant to Rules 12(b)(1) and 12(b)(6) at 1, Doc. No. 9. The Government's use of Rule 12(b)(1) is proper because the independent contractor exception is a jurisdictional rule. *See Norman v. United States*, 111 F.3d 356, 356–57 (3d Cir. 1997); *see also Smiley v. Artisan Builders*, No. 13-cv-7411, 2015 WL 996366, at *1–2 (E.D. Pa. Mar. 4, 2015) (collecting cases).

In this case, the Government's motion to dismiss on the basis of the independent contractor exception was a factual, rather than a facial attack on the court's jurisdiction. *See* Oct. 25, 2017 Order at 1, Doc. No. 18. As the Third Circuit has explained, "[w]here a motion constitutes a factual (as distinct from a facial) attack on the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations." *Tucker v. Sec'y of Health & Human Servs.*, 487 F. App'x 52, 54 (3d Cir. 2012). Indeed, "[i]f the factual record is adequate, the District Court may weigh the evidence presented by the parties to determine if subject matter jurisdiction exists." *Id.* Ultimately, the plaintiff bears the burden of proving the court has subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### IV. DISCUSSION

The FTCA is a limited waiver of sovereign immunity and allows for monetary claims against the United States in a limited set of circumstances. *See* 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2671. The FTCA waives sovereign immunity for the actions of federal agencies, but

not for those of independent contractors. *See Norman v. United* States, 111 F.3d 356, 357 (3d Cir. 1997) ("Title 28 U.S.C. § 2671 explains that 'Federal agency' and 'Employee of the government' do not include any contractor with the United States. Thus, there is an independent-contractor exemption in the Federal Tort Claims Act.").[6] In other words, the United States cannot be held liable under the FTCA for torts committed by independent contractors. *See United States v. Orleans*, 425 U.S. 807, 814–15 (1976).

The first issue in this case is whether Berks County is an independent contractor. The answer to this question hinges on an analysis of whether "the government has the power to control the detailed physical performance of the contractor." *Norman*, 111 F.3d at 357 (internal citation and quotation marks omitted).

In analyzing whether the Government has the power to control, the court should consider whether "day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 814. ("A critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." (internal quotation marks and citation omitted)). For example, in *United States v. Logue*, 412 U.S. 521 (1973), the Supreme Court found that, despite the fact that the Government retained the right to inspect the county jail to ensure compliance with the contract and federal regulations, the county jail was still an independent contractor because, *inter alia*, "the agreement [gave] the United States no authority to physically supervise the conduct of the jail's employees." *Id.* at 529-30 (alteration to original). Thus, the Government could "take action to compel compliance with

---

[6] 28 U.S.C. § 2671 provides in relevant part as follows:
> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but *does not include any contractor with the United States*.

*Id.* (emphasis added).

federal standards, but it did not supervise operations." *Orleans*, 425 U.S. at 815 (discussing *Logue*).

Also, although a lack of on-site Government employees supports a determination that a particular entity is an independent contractor, *see id.* at 817, the fact that Government employees may be stationed on-site does not compel a contrary conclusion. In *Gibson v. United States*, 567 F.2d 1237 (3d Cir. 1977), the Office of Economic Opportunity ("OEO"), contracted with Federal Electric Company ("FEC") to run the "Kilmer Center." *See id.* at 1239. The Kilmer Center was a Job Corps center. *See id.* at 1239–40. "[M]any aspects of the Camp's operation were subject to OEO approval" and there was a permanent OEO representative on site. *Id.* at 1240–41. Notwithstanding the OEO's heavy involvement with the Kilmer Center, the Third Circuit affirmed the district court's conclusion that the FEC was an independent contractor because, *inter alia*, "[t]he fact of broad, supervisory control, or even the potential to exercise detailed control, cannot convert a contractor into an agent, nor can it be the basis for imposing vicarious liability on the United States." *Id.* at 1242; *see id.* at 1246 ("Because FEC was an independent contractor . . . .").

Additionally, the Government may require detailed compliance with regulations and contract provisions without turning an entity that would otherwise be an independent contractor into a federal agency. *Orleans*, 425 U.S. at 816 ("[T]he Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs or of state governmental bodies into federal governmental acts."). Thus, "the question . . . is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815 (alteration to original). Indeed, the Government may routinely inspect

8

the independent contractor to ensure compliance without supervising day-to-day operations. *See Fraser v. United States*, 490 F. Supp. 2d 302, 311 (E.D.N.Y. 2007) ("The fact that the Government retained the right to inspect Cooper's work via its employee, the COTR, does not negate the Government's immunity. The Government is immune to liability even where it retains the right to inspect a contractor's work or its compliance with regulations."); *see also Brooks v. A. R. & S. Enters., Inc.*, 622 F.2d 8, 12 (1st Cir. 1980) ("The right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors.").

Here, Berks County is an independent contractor. In fact, E.D. likely conceded this issue. In the telephone conference held on October 17, 2017, the court asked E.D.'s counsel: "I believe from the plaintiff's standpoint, that you are conceding that [Berks County] is an independent contractor, is that correct?" Def.'s Suppl. Br. at Ex. 1, Tr. of Telephone Conference at ECF p. 3, Doc. No. 25-2. Counsel for E.D. responded and stated, "[t]hat's correct, your Honor, although that doesn't negate any responsibilities or duties of the United States Government under the [FTCA]."[7] *Id.* (alteration to original).

Notwithstanding E.D.'s likely concession, the court will analyze the merits of whether Berks County was an independent contractor. First, the terms of the IGSA demonstrate that ICE broadly delegated its duties to BCRC-IFC: "The Service Provider shall provide residents/detainees with safekeeping, housing, subsistence, medical services that are not provided for elsewhere and other services in accordance with this Agreement." IGSA at 3. This broad delegation of duties strongly implies that the Government did not control day-to-day operations at BCRC-IFC. But not only does the IGSA indicate that the Government did not

---

[7] Notably, in her supplemental brief, Doc. No. 26, E.D. argues that Berks County is not an independent contractor. The Government, believing that E.D. improperly changed her position from the one she took in the telephone conference, filed a reply to the plaintiff's supplemental response. Reply to Pl.'s Suppl. Resp., Doc. No. 32.

control daily operations, the record created by the parties underscores the fact that ICE did not control day-to-day operations at BCRC-IFC.

Essentially every employee at BCRC-IFC deposed by either party testified that ICE did not control his or her day-to-day activities and responsibilities. *See supra* at 2. In fact, E.D. has not offered a single example of a BCRC-IFC employee who was supervised and controlled, on a daily basis, by ICE.

The fact that the United States retained generalized compliance supervision over Berks County at BCRC-IFC does not change the conclusion that the Government did not control operations daily. E.D. points to Reiser's supervision and Nakamoto's inspection audits to argue that the Government controlled day-to-day operations. *See* Pl.'s Suppl. Resp. at 6–7. This argument is unpersuasive. Nakamoto did not supervise daily operations; instead, it inspected BCRC-IFC and then reported its findings to ICE. *See* Compliance Review Summ. Report. Similarly, Reiser's role was also compliance oriented. She ensured Berks County's compliance with the IGSA and provided BCRC-IFC management with suggestions on ways they could ensure compliance with the IGSA. *See* Reiser Dep. Tr. at 103, 131. Reiser did not to control or supervise daily operations at BCRC-IFC. *See id*.; *see also* Contracting Officer's Representative Appointment Letter.

Compliance measures, such as those exemplified by Reiser and Nakamoto are standard in Government contracting.[8] E.D. essentially asks the court to create a rule that would open the Government to monetary damages under the FTCA anytime it attempts to ensure compliance

---

[8] All of E.D.'s other alleged instances of daily supervision and control are also fairly characterized as compliance measures. *See, e.g.*, Pl.'s Suppl. Resp. at 6 (arguing that the detainee complaint process also indicated that ICE maintained daily supervision and control). Additionally, while E.D. highlights in her complaint that ICE employees such as Jeremiah Petrey had "frequent contact and interaction with Berks County employees," Compl. at 5, she has not here argued that Berks County is not an independent contractor because of the involvement of those employees at BCRC-IFC. Moreover, she has not provided the court with any instances where those ICE employees exercised control over any Berks County employee's day-to-day duties.

with a Government contract through a COR and an auditing group. Such a rule would unduly broaden the scope of the Government's waiver of sovereign immunity under the FTCA.

Moreover, E.D.'s argument conflates ensuring compliance with operational supervision. The test is whether the Government supervises and controls day-to-day operations; not whether the Government implements measures to ensure compliance. *See Orleans*, 425 U.S. at 815 (discussing *Logue* and noting that the Federal Bureau of Prisons could take steps to ensure compliance without supervising daily operations). Finally, the fact that Berks County is required under the IGSA to comply with federal regulations also does not change this conclusion. *See id.* at 816 ("[T]he Government may fix specific and precise conditions to implement federal objectives.").

E.D. understandably attempts to avoid the consequences of the independent contractor exception by arguing that the Government was *directly* negligent. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 4–7, Doc. No. 11. In other words, E.D. contends not that the Government should be held vicariously liable for Berks County's negligence, but that the Government should be held directly liable for its own negligence. Thus, she argues that the independent contractor exception is not triggered. *See id.*

This is argument is unavailing. The Government cannot be held directly liable under the FTCA for breaching a duty that it has delegated to an independent contractor. *See Verizon Wash., D.C., Inc. v. United States*, No. 16-cv-1925 (RC), 2017 WL 2483725, at *5 (D.D.C. June 8, 2017) (collecting cases and noting that "following *Orleans*, courts routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor" (citation and internal quotation marks omitted)); *see also Harper v. United States*, 515 F.2d 576, 578–79 (5th Cir. 1975) (affirming district court's rejection of plaintiff's "attempts to charge the government with a negligent failure periodically to inspect and

supervise the jail for safety and competency on the part of county officials" because the Government delegated duties to independent contractor). *But see Lin Li Qu v. Cent. Falls Det. Facility Corp.*, 717 F. Supp. 2d 233, 240 (D.R.I. 2010) (denying motion to dismiss on the basis of the independent contractor exception because the plaintiff alleged that the United States was directly negligent).

In *Gibson*, the Third Circuit addressed the plaintiff's contention that the Government was directly negligent. *See id.* at 1245 ("The crux of this argument would necessarily be OEO's supposed failure, in light of the character of enrollees admitted to the program, to construct or require construction of adequate security facilities, or to give FEC's security officers arrest authority by deputizing them as Deputy U.S. Marshals."). The Third Circuit rejected the plaintiff's argument because "it [was] clearly evident [from the District Court's findings] that the duty to provide adequate security measures devolved not upon the Government, but rather upon FEC." *Id.* at 1246. Therefore, the court concluded that the Government could not be held liable for breaching a duty it delegated to an independent contractor. *See id.*

The direct negligence argument advanced in *Gibson* is very similar to the argument advanced here. Like in *Gibson*, the dispositive inquiry here is whether the Government delegated the duty that the plaintiff alleges it breached. In *Gibson*, the duty was the "duty to provide adequate security measures." *See id.* Here, the alleged duty is safekeeping. *See* Compl. at 11–12. Thus, the question is whether the Government delegated its safekeeping duties to Berks County.

Here, the record shows that the Government delegated its safekeeping duties to Berks County. This is evident from the face of the IGSA, which states: "The Service Provider shall provide residents/detainees with safekeeping, housing, subsistence, medical services that are not provided for elsewhere and other services in accordance with this Agreement." IGSA at 3.

Safekeeping is specifically listed as a duty that Berks County contracted with ICE to provide. This contractual language, together with the the record developed by the parties, makes it clear that the duties of safekeeping were delegated to Berks County. *See, e.g.*, Reiser Dep. Tr. at 133–34 ("Q. Did any ICE employees have day-to-day responsibility over the safekeeping of detainees housed at the Berks County facility? A. No.").

## IV. CONCLUSION

The court will grant the Government's motion to dismiss on the basis of the independent contractor exception because the Government has not waived sovereign immunity for this claim.[9] Berks County is an independent contractor, and the Government, through ICE, delegated its safekeeping duties of detainees to Berks County. Both of these conclusions are supported by the IGSA and the record presented by the parties to the court. As a result, the court lacks jurisdiction to hear E.D.'s claim that the United States violated the duty of safekeeping it owed her while she was detained at BCRC-IFC. Accordingly, the court grants the Government's motion to dismiss.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[9] Because the independent contractor exception applies in cases where the Government has not waived sovereign immunity under the FTCA, it is a jurisdictional rule. *See Orleans*, 425 U.S. at 813 ("The Federal Tort Claims Act is a limited waiver of sovereign immunity . . . ."); *see also Smiley*, 2015 WL 996366, at *1–2 (discussing jurisdictional nature of FTCA independent contractor exception). Because the court finds that the independent contractor exception applies, the court lacks jurisdiction over this case. Accordingly, the court does not need to address the other arguments raised by the Government in its motion to dismiss, *i.e.*, (1) whether E.D. exhausted her administrative remedies; (2) whether the FTCA's discretionary function exception applies; and (3) whether E.D. stated a plausible claim.